ANTHONY KOWALSKI, RESPONDENT, v. WILLIAM G. McADOO, DIRECTOR GENERAL OF RAILROADS, APPELLANT.

Submitted March 21, 1919—Decided July 11, 1919.

The fact that an employe was arrested and locked up on a criminal charge of stealing his employer's goods does not constitute a voluntary leaving of the employment by the employe.

On appeal from the First District Court of Jersey City.

Before Justices BERGEN, KALISCH and BLACK.

For the appellant, *Vredenburgh, Wall & Carey.*

For the respondent, *Isaac F. Goldenhorn.*

The opinion of the court was delivered by

KALISCH, J. The question growing out of the facts of this case is whether the plaintiff, who, being in the employ of the Pennsylvania Railroad Company, having been arrested and convicted in a police court of Jersey City, upon a complaint alleging that he stole a pair of shoes from a car of his employer, and, as a consequence of the accusation, was detained in jail six or seven days awaiting a trial, can properly be charged with having left his employer's service *voluntarily,* and thus be debarred from recovering the wage increase provided by the defendant to be effective from January 1st, 1918?

From the evidence in the case it appears that the plaintiff had worked for the railroad company about seven years. His particular employment, from January 1st, 1918, to May 15th, 1918, was that of a gang leader. He was paid thirty-two cents an hour and he worked twelve hours a day, including Sundays.

By virtue of General Order No. 27, dated May 25th, 1918, and Supplement No. 4, dated July 25th, 1918, issued by defendant, director general of railroads, the plaintiff claimed in the court below the increase to fifty-eight cents an hour as the wage to be paid according to the order.

The provision of Supplement No. 4 is as follows: "The increases in wages and the rates established shall be effective as of January 1st, 1918, and are to be paid according to the time served to all who were in the railroad service, or who have come into such service, and remained therein. A proper ratable amount shall also be paid to those who for any reason since January 1st, 1918, have been dismissed from the service, but shall not be paid to those who left it voluntarily."

The only point made and contended for by counsel of appellant in the court below, and now here, was and is, that the plaintiff has disentitled himself to any of the increase of wages from January 1st, 1918, to May 15th, 1918, because the plaintiff, on May 15th, 1918, was arrested and locked up for an alleged theft of the goods of his employer, and that this in effect was a voluntary leaving by the plaintiff of his employment.

The general tenor of the argument urged upon us to sustain this contention is, that to permit the plaintiff "to recover retroactive back pay granted by the sovereign power as a reward for loyal service after that employe has robbed his sovereign," would practically allow "the plaintiff to take advantage of his own wrong and to found a claim upon his own iniquity."

There is no pretence that the plaintiff did not render loyal and efficient service to his employer from January 1st, 1918, to May 15th, 1918, before he committed the alleged theft. The fact that he was arrested and locked up on a criminal charge was wholly without any significance, unless it was shown that the plaintiff created the situation for the purpose of abandoning the employment of the railroad company. And this does not appear from the evidence. But, on the contrary, it appears that the plaintiff's arrest was caused by the railroad company, his employer, and it is therefore inconceivable upon what plausible ground it can be even argued that the plaintiff left his employment voluntarily. According to the appellant's theory, the plaintiff would be chargeable with having voluntarily left his employment, if, during his service, he was arrested for an alleged offence committed upon a stranger, or was arrested upon civil process at the suit of a third person, and being unable to give bail was locked up to await a trial and the disposition of his case.

We think that the question of the plaintiff's arrest, or even of his guilt or innocence, is wholly foreign to the situation presented here. The pertinent inquiry is, Did the plaintiff voluntarily leave his employment? Webster defines the word "voluntary" "acting without compulsion, or without being in-

fluenced by another; acting by choice or one's own accord or free will." In the case *sub judice* it became a question of fact for the trial judge to determine whether the plaintiff left his employment voluntarily, and the facts not only justified the court in finding that the plaintiff did not, but also that he was dismissed from the service of the railroad company. A reference to the order issued by the defendant shows that the extra compensation was to be paid to an employe "who for any reason since January 1st, 1918," has been dismissed from the company's service. The term "for any reason" is as broad in its scope as the general sense of the term implies. A dismissal of an employe from employment for theft, or for inefficiency, or for any proper or improper ground of discharge, would come clearly within the meaning of the term, and would be no bar to a recovery of the back pay.

A careful examination of the evidence in the cause shows that there was proof of facts and circumstances which taken together were tantamount to a dismissal of the plaintiff from his employment by the railroad company.

Before concluding, we think the plaintiff is entitled to have it stated that there was no competent proof in the case upon which the trial judge could have based a finding that the plaintiff was guilty of the alleged theft. The plaintiff denied guilt. After the case was rested, on part of plaintiff, the following colloquy took place between counsel: "Mr. Gormley—I think it is consented that this man was arrested and convicted on the charge of petty larceny. Mr. Goldenhorn— We admit that, and we regret that we have not any method of appeal." Hereupon follows an admission that "the plaintiff was convicted on the charge of petty larceny by Judge Leo Sullivan, of the First Criminal Court of Jersey City, and that the sentence was that the plaintiff pay a fine of $25 or ninety days in jail, and that the plaintiff paid the fine."

Of course, this was not evidence in the civil suit of the truth of the facts. The only legal effect of this admission was to put the record in evidence so as to affect the credit of the witness.

There was no proof offered in the case that the plaintiff committed the alleged theft, and, as has already been observed, we are unable to perceive, even if the plaintiff did steal the shoes, what material bearing that fact, under the terms of the order, could have on the issue tried by the court below.

The judgment is affirmed, with costs.